# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES LEOS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SHERMAN, *et al.*,<br><br>　　　　　Defendants. | Case No. 1:20-cv-00528-NONE-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS<br><br>(ECF Nos. 1, 14, 18)<br><br>**FOURTEEN (14) DAY DEADLINE** |

**I.　Background**

Plaintiff James Leos ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

On August 13, 2020, the Court screened Plaintiff's complaint and found that Plaintiff stated a cognizable claim for unconstitutional conditions of confinement in violation of the Eighth Amendment against Defendants Sherman and Milan, but failed to state any other cognizable claims for relief. (ECF No. 14.) The Court ordered Plaintiff to either file a first amended complaint or notify the Court of his willingness to proceed only on the cognizable claims identified by the Court. (Id.) Following an extension of time, on October 19, 2020, Plaintiff notified the Court of his willingness to proceed on the cognizable claims identified by the Court. (ECF No. 18.)

///

1

## II.     Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

### A.     Allegations in Complaint

Plaintiff is currently housed at California State Prison, Corcoran in Corcoran, California. The events in the complaint are alleged to have occurred at the California Substance Abuse Treatment Facility ("SATF") in Corcoran, California.  Plaintiff names the following defendants: (1) Stuart Sherman, Warden at SATF; and (2) Richard Milan, Supervisor of Building Trades at SATF.  Plaintiff sues both in their individual capacities.

SATF was originally constructed approximately 20 years ago.  On information and belief, SATF has not undergone any rehabilitation, modification, or significant repair since being built.
///

SATF consists of seven separate yards, each having a design capacity of approximately 500 inmates. Plaintiff was housed on a level two Special Needs Yard. There are three separate housing buildings on F-Yard. Each F-Yard contains a separate kitchen and dining facility.

On an unspecified date, Plaintiff informed the officer working the dining hall that a feather was in his tray. On two separate occasions, Plaintiff informed the dining officer of a roach in his food tray, once in his salad, the other time in his main meal.

Plaintiff alleges that Defendants' policy, custom, and practice is to allegedly submit work orders for vermin infestations and roof repair and then deliberately ignore the infestations and leaking roofs in the facilities. Defendants' policy on janitorial efforts in mopping up water and sanitizing surfaces is insufficient to abate the risk of harm to Plaintiff and inmates' health and safety posed by water contaminated with fecal matter leaking from the ceiling onto the tables at the same time inmates like Plaintiff are consuming their meal.

Defendants knew about the disintegration of ceiling tiles and fireproofing material that poses possible hazards to individuals utilizing the dining space below. Defendants' policy of keeping inmates away from active leaks during mealtime does not abate the risk created by placing them at tables under disintegrating ceiling tiles. Even when not raining, Plaintiff and inmates are seated at tables where mice and maggots fall from the ceiling during mealtime.

Defendants plan to replace the roof, but it was initiated over 24 months ago and is still in the design phase and construction has not started. Defendants are aware that the water leaks and missing or damaged ceiling tiles create alternate paths of transmission for harmful pathogens.

Numerous individuals have sued Defendant Sherman for the vermin infestations and roof leakages, dating back to 2013. Defendant Sherman's policy is to ignore the civil complaints and complaints of inmates and let the facility deteriorate.

On a couple of occasions during the raining season, Plaintiff had contaminated water fall from the ceiling onto his food tray and on his head.

California is an area that is prone to earthquakes, and is an area that receives rain.

Plaintiff has been informed and believes that the SATF prison is built with the use of defective materials or methods of construction, and any and all repairs are made with the use of

1   substandard materials and/or substandard methods of construction, resulting in ineffective repairs.

2         Plaintiff alleges that Defendants Sherman and Milan have a duty to protect him against
3   injury in the dining hall from suspended ceiling tiles or ceiling parts falling onto him,
4   electrocution, consumption of contaminated food and drinks, and exposure to mold.  Plaintiff
5   states that the neglect of the physical plant at SATF is evident from the most cursory of visual
6   inspections.  The F-Yard Dining and Kitchen roofs leak; there is continuous flooding of the
7   dining hall, visiting facility, education facility, housing unit common areas, and the cells
8   themselves during the rainy season; and many ceiling tiles are missing in the dining hall.

9         The roof of the Facility-F dining hall is not completely protected from water during rainy
10   periods.  Water has entered the Facility-F dining hall when it is raining for the past numerous
11   years.  The underside of the roof and roofing girders are covered with insulation.  Inside the
12   dining hall there is an interior grid suspension system attached to the ceiling to hold the ceiling
13   tiles in place.  The tiles are approximately four feet long, two feet wide, and three-fourths of an
14   inch thick, and are about twenty feet above the floor.  There are electrical systems, including
15   lighting, heating, ventilation and cooling systems, and alarms installed in the dining hall.  In the
16   dining hall, rainwater has caused saturation and breaking of the ceiling tiles, causing them to fall,
17   warp, and not sit properly on the grid work.  The suspended ceiling tile grid and the fasteners
18   securing the ceiling tile grid to the ceiling have corroded.  Water has entered the electrical light
19   fixtures; mold has grown on the ceiling tiles, grid work, heating and ventilation, and cooling
20   systems, insulation and the walls; and there is water damage to the ceiling insulation, electrical
21   lighting, and electrical wiring.

22         The ceiling grid system is comprised of various metal parts, including main beams, cross
23   tees, hangers, nuts and bolts, and perimeter moldings.  The integrity of the entire system is
24   dependent upon the hangers.  The manufacturer's instructions provided that the ceiling tiles are to
25   be installed in an area that remains dry, clean, and protected from the elements.  The ceiling tiles
26   weigh about five pounds when they are dry, but twenty pounds when saturated with water.  The
27   tiles are not intended to be wet when sitting in the suspended ceiling grid.  When they become
28   wet, the integral strength of the ceiling tiles is compromised and they collapse and fall from the

Case 1:20-cv-00528-NONE-BAM   Document 19   Filed 10/23/20   Page 5 of 10

grid system. To ensure the safety of people, all water damaged ceiling tiles must be removed from the grid work. When the ceiling tiles become wet, some collapse and fall, pieces of the tiles fall, and some warp. Many of the tiles bear water stains. The corrosion of the grid system itself is visible from the floor of the dining hall through the gaps in the ceiling tiles or where the tiles are missing. Plaintiff contends that, due to the damage that is seen and that which is not visible but highly probable due to the conditions that the grids are exposed to, there is an obvious danger that ceiling tiles will fall, even without further rain damage, such as during an earthquake. Plaintiff further contends that the falling ceiling tiles create a risk of injury such as breaking skin, the head, nose, shoulder and hands, and possibly even death.

During rainfall, the rainwater runs over the electrical appliances (heating, ventilation and cooling systems, lighting, and alarms) in the dining hall and gathers in pools on the dining hall floor. Most of the floor becomes wet or flooded. The instructions for the electrical systems state that they are to be installed in areas that remain dry, clean, and protected from the elements to prevent shock or fire. None of them are designed to be exposed to the type of water contact that they receive. The rainwater corrodes the electrical wiring, connections, and components over time, creating the possibility that a short circuit will occur.

Although Defendant Milan has known of the deteriorating physical plant at SATF for many years, Defendant Milan has failed and refused, and continued to fail and refuse, to repair.

Plaintiff must collect and eat his food in the Facility F dining hall. He has to walk and consume his food where the water has pooled on the floor and is exposed to the risk of electrocution. Plaintiff has had rainwater (contaminated water) drip into his food and onto his clothing and head from the ceiling, creating a risk of infection from mold, and is exposed to a danger that the ceiling tiles will fall. Plaintiff has no choice of where he will sit and consume his meals after entering the dining hall.

Instead of repairing the roof to prevent water from getting into the building, Defendants continue to replace the damaged ceiling tiles with new ones or leave the damaged tiles in place. The new tiles become exposed to the rainwater and are subject to deterioration.

///

Plaintiff has had parts of the ceiling tiles fall close to him. There is a real danger that the grid work will fall due to the corrosion that it has sustained and the weight of the wet ceiling tiles. These are not isolated incidents, but a pattern that has continued for many years.

Defendants have been aware of the fact that the F-Yard dining facility is infested with vermin for many years. There have been numerous complaints by staff and inmates over the years, all of which have been ignored. On November 4, 2018 Facility-F I.A.C. Executive Body Food Services Chairman Williams stated the kitchen has a roach infestation, black mold on the food-line and restrooms, the 'B' section ventilation system located directly over the food is blowing out feathers, and workers are overworked, overwhelmed, and most do not get paid.

On January 27, 2019, inmate Paul John Denham P16644 informed Defendants Sherman and Milan of the condition of the leaking dining hall room and the ceiling damage. Defendant Milan responded that the prison "has multiple leaks throughout the institution. Due to staffing and budget issues, plant operations cannot keep up with the work orders submitted for leaking roofs. Most of these repairs are time consuming due to the severe damage. The work orders are prioritized by the severity of leaks. Plant Operations has submitted special repair request to Facilities Management in Sacramento for all the leaking roofs at SATF. Plant Operations will inspect the ceiling tiles in the dining hall and remove any that may fall." (ECF No. 1, pp. 13–14.)

Plaintiff has had feathers, roaches, and contaminated water from the ceiling fall into his food tray. Plaintiff immediately reported the incident to the correctional officer monitoring the meal. Plaintiff was, and continues to be, sickened by the unabated filth and unsanitary conditions in which his food was prepared, handled, and served. Vermin carry disease, contaminating food with their feces and saliva. The current Pest Control Policies are resulting in an unsanitary environment on the F-Yard dining facility.

Plaintiff has to pick at his meals. If the food is not hot enough, Plaintiff cannot eat the food, since being served a feather with his meal.

Plaintiff seeks declaratory and injunctive relief and monetary damages.

///

///

**B.     Discussion**

    **1.     Eighth Amendment – Conditions of Confinement**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Farmer v. Brennan, 511 U.S. 825 (1994); Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted). To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference . . ." Labatad v. Corrs. Corp. of Amer., 714 F.3d 1155, 1160 (9th Cir. 2013) (citing Gibson v. Cty. of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002)).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. Cty. of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995).

Objectively, extreme deprivations are required to make out a conditions-of-confinement claim and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992). Although the Constitution "'does not mandate comfortable prisons,'" Wilson v. Seiter, 501 U.S. 294, 298 (1991), "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time," Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989).

Plaintiff alleges that Defendant Sherman has been sued a number of times since 2013 regarding the roof leakages and vermin infestations, but his policy is to ignore the civil and inmate complaints and to let the facility deteriorate. Plaintiff further alleges that Defendant Milan has been aware of the deteriorating physical plant at SATF for many years, but has failed and refused to make repairs. On January 27, 2019, inmate Paul John Denham informed Defendants Sherman and Milan of the condition of the leaking dining hall room and ceiling damage, and

Defendant Milan responded that there were multiple leaks throughout the institution, but due to staffing and budget issues, plant operations cannot keep up with the work orders submitted for leaking roofs.

Based on the allegations in the complaint, Plaintiff states a cognizable claim against Defendants Sherman and Milan, in their individual capacities, for unconstitutional conditions of confinement in violation of the Eighth Amendment.

### 2. State Law Claims

Plaintiff appears to assert state law claims for violations of California Health Codes. The California Government Claims Act requires exhaustion of Plaintiff's state law tort claims with the California Victim Compensation and Government Claims Board, and Plaintiff is required to specifically allege compliance in his complaint. Shirk v. Vista Unified Sch. Dist., 42 Cal. 4th 201, 208–09 (Cal. 2007); State v. Super. Ct. of Kings Cty. (Bodde), 32 Cal. 4th 1234, 1239 (Cal. 2004); Mabe v. San Bernardino Cty. Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1111 (9th Cir. 2001); Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995); Karim–Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988). Plaintiff has failed to allege compliance with the Government Claims Act.

### 3. Declaratory Relief

To the extent Plaintiff's complaint seeks a declaratory judgment, it is unnecessary. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Vill., 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985). If this action reaches trial and the jury returns a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

///

      **4.**       **Injunctive Relief**

Insofar as Plaintiff seeks injunctive relief, any such request is now moot. As currently alleged, Plaintiff is no longer housed at CSATF, where the events at issue occurred, and he has not alleged that he has any expectation of returning to CSATF in the future. Therefore, any injunctive relief he seeks regarding conditions at CSATF is moot. See Andrews v. Cervantes, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007) (prisoner's claims for injunctive relief generally become moot upon transfer) (citing Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (holding claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been moved and "he has demonstrated no reasonable expectation of returning to [the prison]")).

**III.**     **Conclusion and Recommendation**

Based on the above, the Court finds that Plaintiff's complaint states a cognizable claim for unconstitutional conditions of confinement in violation of the Eighth Amendment against Defendants Sherman and Milan. However, Plaintiff's complaint fails to state any other cognizable claims for relief.

Accordingly, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's complaint, filed April 14, 2020, (ECF No. 1), against Defendants Sherman and Milan for unconstitutional conditions of confinement in violation of the Eighth Amendment; and
2. All other claims be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

\*\*\*

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on

appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 23, 2020**       /s/ *Barbara A. McAuliffe*
                                  UNITED STATES MAGISTRATE JUDGE